IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HORAN, | ) |
| | ) |
| Plaintiff, | ) No. 09 C 0505 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| CITY OF CHICAGO, Chicago Police Officers | ) |
| K. SMITH, Star # 4850, M. BURKE, Star #8447, | ) |
| and SGT. ZODO, Star #1561, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Horan has filed a ten-count first amended complaint against defendants, Chicago police officers K. Smith, Star # 4850, M. Burke, Star # 8447, Sgt. Zodo, Star # 1561 ("defendant officers"), and the City of Chicago (the "City") alleging defendant officers: violated his rights under the Fourth Amendment to the United States Constitution by using excessive force (Count I); failed to intervene (Count II); conspired to deprive him of his constitutional rights (Count III); violated his rights under the Fourteenth and Eighth Amendments of the United States Constitution (Count IV); and conducted an illegal search and seizure (Count V). Counts VII through X allege state law claims for battery (Count VII), assault (VIII), malicious prosecution (Count IX), and intentional infliction of emotional distress ("IIED") (Count X). Count VI alleges that the City is liable for defendant officers' state law violations under 745 ILCS 10/9-102. Plaintiff has moved for partial summary judgment as to Count V. Defendants have moved for summary judgment on all counts. For the reasons set forth below, plaintiff's motion is granted and defendants' motion is granted in part and denied in part.

# FACTS[1]

Around midnight on January 29, 2008, defendants Burke and Smith were on routine patrol near the 4800 block of North Broadway. At the time, plaintiff Jason Horan lived in Apartment 409-S, a studio apartment, at 4240 North Clarendon Avenue, Chicago. Defendants Burke and Smith encountered Charles Elverum ("Elverum") at 4840 North Broadway, about six blocks south and four blocks east of 4240 North Clarendon. Elverum was stumbling and weaving from side to side and appeared intoxicated on some substance or to be suffering from a medical condition. Elverum had a pipe consistent with the type used for ingesting or smoking narcotics. Burke and Smith had never seen Elverum prior to that day.

Elverum claimed to live in apartment 409-S at 4240 North Clarendon with plaintiff Horan. Elverum told Burke and Smith that plaintiff kept drugs in the apartment and that he wanted the drugs removed. Elverum was unable to provide any photo identification to defendants during the field interview and had nothing in his possession that indicated his place of residence. A LEADS check of the name Charles Elverum came back with the response, "unknown record," meaning that there was no record of Charles Elverum in the Illinois State Police Department database. Burke and Smith asked Elverum if he would sign a consent to search form and Elverum agreed. Defendant Officer Zodo arrived at the location with the form. Elverum had a conversation with Zodo and then signed the form. All three defendants and Elverum then went to 4240 North Clarendon with Elverum in the backseat of Smith and Burke's vehicle.

---

[1]Unless otherwise indicated, the following are uncontested facts from plaintiff's and defendants' Local Rule 56.1 statements.

The front entrance of the apartment building located at 4240 North Clarendon has a security system that must be used in order to gain entry to the building. There are two ways to gain access to the apartments: (1) using a key to unlock the first door that opens to the mailboxes and the second door after the mailboxes; or (2) by using the intercom to call a resident and be buzzed through both sets of doors. When a new resident moves into the apartment building, the resident's name and code is added to the intercom directory and a mailbox is labeled with his or her name. When defendants and Elverum arrived at the building, Elverum did not have keys to the front door. None of the defendants checked the electronic directory or the mailboxes to determine whether Elverum lived there. Defendants directed Elverum to place a call to plaintiff to buzz Elverum in. Elverum then placed a telephone call to plaintiff and said, "I'm here, let me in." All three defendants and Elverum entered the building after plaintiff buzzed them in. Defendants went upstairs to the hallway outside of plaintiff's apartment where the door was partially open.

Plaintiff was inside the apartment when defendant officers attempted entry. Defendants did not see plaintiff until they were entering the doorway of the apartment. When defendants were at the doorway, plaintiff rushed the door and tried to shove them back out. The altercation in the doorway lasted a short while. Plaintiff struggled with defendant officers, fighting them and resisting arrest. Defendant officers Smith and Zodo placed handcuffs on plaintiff and escorted him downstairs. Defendant officer Burke secured plaintiff's apartment and recovered contraband, including narcotics and drug paraphernalia found on a table and an open box three feet from that table.

On September 24, 2008, during criminal proceedings stemming from the arrest, the Cook County Circuit Court held a hearing on plaintiff's motion to suppress and quash arrest. The court found that the search failed on apparent authority grounds, because defendants did not sufficiently establish that Elverum lived in plaintiff's apartment. The court also found that the search did not fall within the plain-view doctrine, because defendants did not legitimately arrive at the place where they made their viewing. The Cook County Circuit Court granted plaintiff's motion and the state immediately dismissed the case via a *nolle prosequi*. All the preceding statements of fact are undisputed.

Defendants argue that they announced themselves as police officers when they entered plaintiff's apartment. Plaintiff denies this. Defendants contend that they could see drug paraphernalia and narcotics on the table inside plaintiff's apartment before entering the apartment, from the hallway. Plaintiff denies this. Plaintiff contends that, after he was handcuffed, plaintiff's face was dragged along the ground and he was hung on a wrought-iron fence by his handcuffs. Defendants deny this.

## DISCUSSION

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Vision Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The burden is on the moving party to identify portions of pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c).

4

When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. Id. at 248. The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelly & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

**Illegal Search and Seizure (Count V)**

Plaintiff has moved for partial summary judgment as to Count V of his first amended complaint, alleging that the individual defendants conducted an illegal search and seizure in violation of plaintiff's Fourth Amendment rights. Defendants have moved for summary judgment on all counts, including count V.

A warrantless search is "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Without a warrant based upon probable cause, any search violates a person's Fourth Amendment rights unless some exception to the warrant requirement exists. United States v. Yang, 286 F.3d 940, 944 (7th Cir. 2002). Such exceptions include circumstances where a person with actual or apparent authority consents to the search. United States v. Matlock, 415 U.S. 164, 171 (1974). A warrantless seizure is permitted if it is conducted pursuant to the plain-view doctrine. Horton v. California, 496 U.S. 128, 136 (1990). A warrantless search is also permissible "when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003).

5

Defendants argue that Elverum had apparent authority to consent to the search of plaintiff's apartment. Determination of apparent authority must "'be judged against an objective standard: would the facts available to the officer at the moment … 'warrant a man of reasonable caution in the belief that the consenting party'' had authority over the premises?" Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990) (quoting Terry v. Ohio, 392 U.S. 1, 21,22 (1968)). Moreover, officers have "a duty to inquire further as to a third party's authority to consent to a search if the surrounding circumstances make that person's authority questionable." Montville v. Lewis, 87 F.3d 900, 903 (7th Cir. 1996).

In the instant case, the facts available to the defendant officers could not have led to them to reasonably believe Elverum had authority over the premises. The fact that Elverum had no manner of identification on him, appeared intoxicated, and did not have the means to access the apartment on his own made Elverum's authority highly questionable and obligated the officers to inquire further as to his authority. The defendant officers, however, did not even ask Elverum whether he paid rent and did not attempt to locate his name in the directory outside the apartment building or at the mailboxes. Instead, they relied on Elverum's mere assertion that he lived at a particular location and that he was acquainted with the plaintiff just enough not to be turned away at his door. For these reasons, the uncontested facts establish that defendants did not have consent to search the apartment from anyone with actual or apparent authority.

Defendants also argue that entry into the apartment and the subsequent search was permitted through the plain-view doctrine. The plain-view doctrine permits warrantless seizure of material when: (1) an officer has lawfully arrived at the place from which the evidence can be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the

incriminating character of the viewed object is immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990). The Horton Court emphasized the first prong of the test, stating, "[i]t is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Id. at 136.

The Fourth Amendment protects people from unreasonable government intrusions in their legitimate expectations of privacy. California v. Acevedo, 500 U.S. 565 (1991). A tenant "has no reasonable expectation of privacy in the common areas of apartment buildings." US v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991) (holding that officers could use keys seized during an arrest to enter the common hallway of an apartment building); United States v. Espinoza, 256 F.3d 718, 723 (7th Cir. 2001) (acknowledging the principle that tenants lack a legitimate expectation of privacy in common areas). Common areas lack this protection because a tenant has "no expectation that goings-on in the common areas [will] remain his secret." Concepcion, 942 F.2d at 1172. This is so even where common areas are locked to exclude persons who are not tenants. Id. at 1171-1172; United States v. Barrios-Moriera, 872 F.2d 12 (2nd Cir. 1989) (holding that a DEA agent lawfully gained entry into a common hallway of an apartment building by following an unsuspecting apartment resident through the locked entry door).

Officers do violate an individuals' Fourth Amendment rights, however, when they use deception to cause a person they then arrest to come to their doorway. People v. Graves, 135 Ill. App. 3d 727, 730 (4th Dist. 1985). Officers are not allowed to use a third party as their proxy to trick an individual into opening the door to his or her home. People v. Wimbley, 314 Ill. App. 3d

18, 31-31 (1st. Dist. 2000) (holding that officers' warrantless arrest was invalid because they used a civilian to cause the defendant to answer his door); see Payton v. New York, 445 U.S. 573, 589 (1980), and its companion case Riddick v. New York, 440 U.S. 934 (1979) (holding that officers' search violated the Fourth Amendment when they entered after defendant's son opened the door).

Unlike the officers in Concepcion, defendants in the instant case did not recover keys for the common area through a lawful arrest; they used deception to gain access to the hallway and visual access to the inside of plaintiff's apartment. Unlike the DEA agent in Barrios-Moriera, the defendants in the instant case did not follow an apartment resident who was entering the building. Instead, defendants directed Elverum, a third-party, to call plaintiff to let him in and thereby entered the secure area themselves. Whether defendant officers could have devised a lawful entry into the common area of the hallway is not relevant, because their deceptive actions also caused plaintiff to open the door of his private residential apartment, where plaintiff had a legitimate expectation of privacy. In this way defendants failed to arrive lawfully at a place from which any evidence could be plainly viewed. Because the plain-view doctrine fails at this first prong, the court need not reach the disputed contention of whether the defendants did in fact see incriminating evidence inside the apartment.

Defendants also argue that exigent circumstances permitted the search regardless of whether they had the consent of someone with authority over the premises. Exigent circumstances exist where, (1) there is a compelling need for official action, and (2) there is no time to secure a warrant. Michigan v. Tyler, 436 U.S. 499, 509 (1978); Lenoir, 318 F.3d at 730. The Supreme Court has characterized preventing the imminent destruction of evidence and

8

addressing the risk of danger to police or other persons as constituting exigent circumstances. Minnesota v. Olson, 495 U.S. 91, 100 (1990). To determine whether there were exigent circumstances, courts ask whether the officers had "an objectively reasonable belief" that those circumstances existed. Leaf v. Shelnutt, 400 F.3d 1070, 1081 (7th Cir. 2005); United States v. Marshall, 157 F.3d 477, 482 (7th Cir. 1998). With regard to the imminent destruction of evidence, courts require that officers have particular reasons for believing that evidence will be destroyed and not merely rely on the fact that drugs are easily destroyed or disposed. See People v. Ouellete, 78 Ill. 2d 511, 516 (1979) (holding that heroin's ability to be readily disposed of was not sufficient to establish exigent circumstances in itself); People v. Patrick, 93 Ill. App. 3d 830, 833 (1981) (holding that police must have particular reasons to believe evidence will be destroyed for exigent circumstances to exist). In cases where the imminent destruction of evidence has constituted an exigent circumstance, there has been specific information that led officers to believe that evidence would be destroyed. U.S. v. Fiasche, 520 F.3d 694, 696 (7th Cir. 2008).

In the instant case, defendants could not have reasonably believed that evidence was at an imminent risk of being destroyed. Although Elverum had told them that there were drugs in the apartment, they had received no information that would suggest the drugs were in danger of being destroyed. The risk to the evidence may have increased when plaintiff attempted to close the door on defendant officers and shove them back out of the apartment; but that circumstance arose only after defendant officers had begun their improper entry and search of the apartment. Likewise, any belief that there was a danger to police or other persons could have come only from actions that were taken after the unlawful search began. Circumstances produced by a

9

search cannot give rise to the exigent circumstances that permit the search in the first place. Vale v. Louisiana, 399 U.S. 30, 34-35 (1970) (holding that the mere possibility that the residents, who were fully apprised of the officers' presence and intention to search the home, might destroy evidence while police awaited a warrant was not enough to establish exigent circumstances and justify the warrantless search). Accordingly, the uncontested facts demonstrate that no exigent circumstances existed to permit a search of plaintiff's apartment.

Defendants also argue that qualified immunity shields them from liability for plaintiff's illegal search and seizure claim. Qualified immunity protects officers from liability so long as their actions could reasonably have been thought consistent with the right they are alleged to have violated. Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). In deciding qualified immunity, courts determine, (1) whether the alleged conduct sets forth a constitutional violation, and (2) whether the constitutional standards were clearly established at the time of the violation. Michael C. v. Gresbach, 526 F.3d 1008, 1013 (7th Cir. 2008). For the reasons discussed above, the court has determined that defendants' actions constituted a constitutional violation. In determining whether the second prong has been met, courts look to whether the particular right has been stated so that reasonably competent officers would agree on its application to a given set of facts. Henderson v. DeRobertis, 940 F.2d 1055, 1059 (7th Cir. 1991); Michael C., 526 F.3d at 1013. Considering the undisputed facts in the light most favorable to defendants, the court finds, for all the reasons discussed above, that no reasonably competent officer would have found an exception to the warrant requirement in the instant case.

Accordingly, the uncontested facts demonstrate that defendants' actions constituted an illegal search and seizure.[2] Consequently, plaintiff is entitled to summary judgment of liability as to Count V of his first amended complaint.

**Excessive Force (Count I), Battery (VII), and Assault (VIII)**

In Count I, plaintiff claims that defendants' actions constituted excessive force in violation of his Fourth Amendments rights. Counts VII and VIII allege state law claims for battery and assault. Defendants have moved for summary judgment on all counts. Plaintiff claims that he was struck in the face by defendant officers while on the ground. Also, plaintiff claims that, after he was placed in handcuffs, his face was dragged across the ground and he was hung on a wrought-iron fence. Defendants deny this and argue, alternatively, that whatever force they used was reasonable because plaintiff resisted arrest. Under the Fourth Amendment, the amount of force used by police officers must be "objectively reasonable" in light of the facts and circumstances of each case. Graham v. Connor, 490 U.S. 386, 397 (1989). Police officers are still bound by this reasonableness standard whether or not plaintiff resists arrest. Id. at 396. Here, the amount of force used is still disputed and is quite material.

Defendants also argue that plaintiff's claims of assault and battery are barred by the Tort Immunity Act, 745 ILCS 10/2-202. The Tort Immunity Act bars claims against government officials for tortuous activity unless the plaintiff can prove that the official's behavior was willful and wanton. Willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or

---

[2] The court notes that this conclusion is entirely consistent with the state criminal court's decision to suppress the evidence.

conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. A person engages in willful or wanton conduct when he or she "ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another." Carter v. Chicago Police Officers M.L. Moore, 165 F.3d 1071,1080-81 (7th Cir. 1998). Again, in the instant case, the amount of force used and the course of conduct taken are disputed.

Accordingly, defendants are not entitled to summary judgment on plaintiff's claim of excessive force. Similarly, defendants are not entitled to summary judgment on plaintiff's claims of battery and assault because there are genuine issues of material fact regarding the circumstances surrounding the use of force and the amount of force used.

**Failure to Intervene (Count II)**

In Count II, plaintiff claims defendants violated his rights by failing to intervene in a constitutional violation. Defendants have moved for summary judgment arguing that, since no underlying violation exists, defendants cannot have failed to intervene. An officer is liable for failing to intervene if, (1) that officer has a reason to know that excessive force is being used or that a constitutional violation is being committed by a law enforcement official, and (2) that officer has a realistic opportunity to intervene. Abdullahi v. City of Madison, 423 F.3d 763, 774 (7th Cir. 2005); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). To be held liable for failing to intervene, an underlying violation must exist. Hardin, 37 F.3d at 285. As discussed above, there is a genuine issue of material fact regarding the use of excessive force, which is an essential predicate to this action and also to the issue of whether defendants had a realistic opportunity to intervene. For this reason, defendants are not entitled to summary judgment on

plaintiff's claim for failing to intervene in a constitutional violation because there is a genuine issue of material fact regarding whether the underlying violation of excessive force occurred.

**Conspiracy (Count III)**

Plaintiff also alleges, in Count III of his first amended complaint, that defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. §1983. To prevail on a § 1983 conspiracy claim, a plaintiff must prove: (1) an express or implied agreement among defendants to deprive him of his constitutional rights; and (2) actual deprivations of those rights in furtherance of the agreement. Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988); Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). Although a conspiracy may be shown by circumstantial evidence, "mere conjecture" that a conspiracy exists is not sufficient to avoid summary judgment. Amundsen v. Chicago Park Dist., 218 F.3d 712, 718 (7th Cir. 2000). Plaintiff has not presented any evidence that defendants agreed to deprive of him of his constitutional rights. Plaintiff argues that defendants, at some point, must have agreed to search plaintiff's apartment, but plaintiff has not presented any facts to suggest that this agreement was aimed at depriving him of any rights. The facts demonstrate only that defendants agreed to search the apartment and then failed to do so properly. Plaintiff's claim also fails because he has not presented evidence that the use of force was the product of any agreement. Instead, the facts presented suggest that the use of force was a spontaneous event that lasted for only a short while. For these reasons, defendants are entitled to summary judgment as to Count III.

**Violations of Rights Under the Fourteenth and Eighth Amendments (Count IV)**

Plaintiff no longer pursues any claims brought under Count IV of his first amendment complaint regarding violations of rights under the fourteenth and eighth amendments of the U.S. Constitution.

**Defendant City of Chicago's Liability Under 745 ILCS 10/9-102 (Count VI),**

In Count VI, plaintiff alleges that the City of Chicago should be found liable for any judgment on state law claims plaintiff obtains against defendant officers pursuant to 745 ILC 10/9-102, which obligates the City to pay tort judgments or settlements for compensatory damages for which an employee, who is acting within the scope of his employment, is liable. Defendants argue that if the court grants summary judgment in favor of defendants regarding the other counts, defendant City of Chicago would be entitled to summary judgment on this count as well. Because there are genuine issues of material fact relating to defendant officers' liability under several counts of plaintiff's first amended complaint, summary judgment for defendant City of Chicago would be inappropriate. Further, the parties do not dispute that defendants were acting within the scope of their employment. For these reasons, the City's motion for summary judgment on count VI is denied.

**Malicious Prosecution (Count IX)**

In Count IX, plaintiff alleges that he was maliciously prosecuted by defendants. Defendants have moved for summary judgment. In Illinois, a successful malicious prosecution claim must establish: (1) the commencement or continuation of an original criminal proceeding by the defendant; (2) termination of the prosecution in favor of the plaintiff in a manner indicative of innocence; (3) the absence of probable cause for such a proceeding; (4) the

presence of malice; and (5) damages resulting to the plaintiff. Swick v. Liautand, 662 N.E.2d 1238, 1242 (1996); Porter v. City of Chicago, 912 N.E.2d 1262, 1265 (Ill. App. Ct. 1st Dist. 2009). The plaintiff bears the burden to prove that the termination of proceedings was favorable for him and was indicative of his innocence. Swick, 662 N.E.2d at 1243. A *nolle prosequi* does not satisfy this requirement if it is done for reasons that do not indicate plaintiff's innocence. Id.; Aguirre v. City of Chicago, 887 N.E.2d 656, 662-63 (Ill. App. Ct. 1st Dist. 2008).

In the instant case, the prior criminal proceeding was not terminated in a manner that indicated plaintiff's innocence. Prosecution was abandoned, rather, because the narcotics found in plaintiff's apartment were discovered during an improper search and could not be used as evidence against plaintiff. For this reason, defendants are entitled to summary judgment as to Count IX of plaintiff's first amended complaint.

**Intentional Infliction of Emotional Distress (IIED) (Count X)**

In Count X, plaintiff alleges defendants performed extreme and outrageous acts with the intent of inflicting severe emotional distress on plaintiff (IIED). Defendants have moved for summary judgment arguing plaintiff has not adduced sufficient facts to establish this claim. To state a cause of action under Illinois law for IIED, plaintiff must allege that: (1) defendants conduct was extreme and outrageous; (2) defendants either intended that their conduct inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) defendants conduct in fact caused severe emotional distress. Lopez v. City of Chicago, 464 F.3d 711, 720 (7th Cir. 2006) (citing McGrath v. Fahey, 126 Ill.2d 78 (1988)).

Police officers are often required to use force in carrying out their duties and their conduct is judged within that context. Carr v. Village of Richmond, 1997 WL 663921, at *8 (N.D. Ill. 1996). Even if the force used by police officers is unlawfully excessive, that alone does not make it extreme and outrageous. Id. Plaintiffs must allege conduct beyond the use of excessive force to establish an IIED claim. Id. In the context of police abuse of power, Illinois law requires that the abuse be particularly extreme. See Doe v. Calumet City, 641 N.E.2d 498, 507 (7th Cir. 1994) (holding that the police officer's conduct did amount to extreme and outrageous conduct because they treated a rape victim in a rude fashion, ignored her calls for helping her daughters, who were still locked in with her rapist, and that the officer's neglect did result in one of the victim's daughters being raped). The conduct of defendants, as alleged in the instant case, is nowhere near the type of conduct that was alleged in Doe. Plaintiff argues that the disputed facts regarding the struggle and being hung on a fence by handcuffs raise genuine issues of material fact. Even if those disputed facts are taken to be true, however, as alleged they are not sufficiently severe to constitute extreme and outrageous conduct. Accordingly, summary judgment on Count X of the first amended complaint is granted in favor of defendants.

## CONCLUSION

For the reasons described above, plaintiff's motion for partial summary judgment for liability as to Count V (illegal search and seizure) of his first amended complaint is granted. Defendants' cross-motion for summary judgment on all counts of plaintiff's first amended complaint is granted as to Counts III (conspiracy), IX (malicious prosecution), and X (IIED) and is denied as to all other counts.

**ENTER:** July 16, 2010

**Robert W. Gettleman**
**United States District Judge**